IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| DAVID B. DIMARCO, | : | Case No. 23-10163-JCM |
| *Debtor.* | : | |
| | : | Chapter 7 |
| INDEPENDENT HEALTH | : | |
| ASSOCIATION, INC., INDIVIDUAL | : | Adversary No. 25-1006-JCM |
| PRACTICE ASSOCIATION OF | : | |
| WESTERN NEW YORK, INC., | : | Related to Doc. No. 29, 32 |
| INDEPENDENT HEALTH | : | |
| CORPORATION, AND | : | |
| INDEPENDENT HEALTH BENEFITS | : | |
| CORPORATION, | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID B. DIMARCO, M.D., | : | |
| *Defendant.* | : | |

*Appearances:* Timothy P. Palmer, Esq. for Plaintiffs Independent Health Association, Inc., Individual Practice Association of Western New York, Inc., Independent Health Corporation, and Independent Health Benefits Corporation

David L. Fuchs, Esq. for Defendant David B. DiMarco, M.D.

### **<u>MEMORANDUM OPINION</u>**

David B. DiMarco, M.D. ("Defendant" or "Debtor") was found liable for fraudulent billing practices by an arbitration panel of the American Health Lawyers Association ("Panel") by an Order issued on April 1, 2023 and a Final Award issued on August 2, 2023 against David B. DiMarco, M.D., David B. DiMarco, M.D., P.C., and DiMarco Vein Center[1] which was confirmed

---

[1] When referring to the parties to the arbitration proceeding, these three entities are collectively referred to as "Respondents."

by the Supreme Court of New York on December 8, 2023.[2]   The Debtor filed for Chapter 7

bankruptcy on April 3, 2023.   Due to the specific factual findings made in the Panel's decision,

Independent Health Association, Inc. ("IHA"), Individual Practice Association of Western New

York, Inc. ("IPAWNY"), Independent Health Corporation ("IHC"), and Independent Health

Benefits Corporation ("IHBC") (collectively "Plaintiffs")[3] filed the within adversary proceeding

on April 8, 2025[4] on the basis that the Final Award is nondischargeable under 11 U.S.C. §§

523(a)(2)(A), (a)(4), and (6), and the Debtor's claimed exemption in the overpaid funds he retained

should be disallowed.   For the reasons set forth below, the Court will grant summary judgment as

to the amount of the Final Award and that the Final Award is nondischargeable under §§

523(a)(2)(A) and (a)(6).   The Court will deny summary judgment as Plaintiff's request that the

debt be found nondischargeable under § 523(a)(4) and the request to disallow the Debtor's stated

exemption.   This Memorandum Opinion consists of the Court's findings of fact and conclusions

of law pursuant to Fed.R.Bankr.P. 7052.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334 as well as the Order of Reference entered by the United States District Court for the Western

District of Pennsylvania on October 16, 1984. This matter is a core proceeding under 28 U.S.C. §

157(b)(2)(B) and (I) as it pertains to the disallowance of exemptions of property of the estate and

determinations as to the dischargeability of particular debts.

---

[2] Plaintiffs filed a *Motion of Independent Health Association, Inc., et al, for Relief from the Automatic Stay* on May 25, 2023 (Doc. 16) seeking to liquidate the Final Award of the Arbitration Panel which was granted by the Honorable Jeffery A. Deller by Order entered on June 23, 2023 (Doc. 38).

[3] When referring to the parties to the arbitration proceeding, these four entities will be referred to as "Claimants."

[4] *See Complaint to Determine Non-Dischargeability of Debt and Disallowance of Exemptions* ("Complaint") (Doc. 1)

## PROCEDURAL HISTORY

An initial pretrial conference on the *Complaint* and *Answer* (Doc. 23) was held on May 29, 2025 where Plaintiffs explained their position that the Final Award was dispositive and controlled the outcome of the issue of nondischargeability in the *Complaint*. As a result, the Court issued an Order requiring a motion for summary judgment to be filed, and on July 15, 2025, Plaintiffs filed the ***Motion of Independent Health Association, Inc., Individual Practice Association of Western New York, Inc., Independent Health Corporation, and Independent Health Benefits Corporation for Summary Judgment with Concise Statement of Facts*** ("Motion") (Doc. 29) and an accompanying ***Brief in Support of Motion of Independent Health Association, Inc., Individual Practice Association of Western New York, Inc., Independent Health Corporation, and Independent Health Benefits Corporation for Summary Judgment*** (Doc. 31) ("Plaintiffs' Brief"). On August 5, 2025 Defendant filed a ***Response to Motion for Summary Judgment*** ("Response") (Doc. 32) and accompanying ***Brief in Opposition to Motion for Summary Judgment*** (Doc. 33) ("Defendant's Brief"). Oral argument on the *Motion* was held on August 22, 2025.

## SUMMARY JUDGMENT STANDARD

Plaintiff's *Motion* is governed by Fed.R.Civ.P. 56, which is made applicable in Bankruptcy Court by Fed.R.Bankr.P. 7056. Under Rule 56, the *Motion* should be granted if Plaintiffs have shown there is no genuine dispute as to any material fact and Plaintiffs are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a)*; Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party has the initial burden of identifying the evidence that shows an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must show there are specific facts that create a genuine issue for trial.

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d Cir. 1996); (quoting *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

## FACTS

Plaintiffs and Defendant previously entered into a total of three "Participating

Physician Agreements" which include the "Individual Practice Association of Western New York,

Inc. Participating Physician Agreement" dated June 3, 2008, the "Independent Health Corporation

Network Physician Agreement" dated March 30, 2005, and the "Independent Health Benefits

Corporation Participating Physician Agreement" dated July 11, 2005 ("Agreements").  Pursuant

to these Agreements, Defendant submitted claims to Plaintiffs for reimbursement, which Plaintiffs

paid.  Plaintiffs conducted an internal audit of claims paid to Defendant for the period of March 1,

2016 through February 28, 2018. Based on the results of the audit, Plaintiffs concluded that they

collectively overpaid Defendant by $1,725,073.79, and therefore, Plaintiffs initially demanded

repayment of the overpaid amounts on October 16, 2018.  When Defendant refused to repay,

Plaintiffs, pursuant to the various dispute resolution provisions contained in the Agreements,

initiated an arbitration proceeding before the American Health Law Association on November 17,

2021 at Case No. 6804 bringing forth claims of breach of contract and common-law fraud against

Respondents David B. DiMarco, M.D., David B. DiMarco M.D., P.C., and DiMarco Vein Center.

Defendant originally participated in the arbitration until on or about October 2022[5]

when the Defendant states he ran out of funs to defend the suit.[6]  On December 16, 2022, Plaintiffs

---

[5] On October 17 2022, Plaintiffs received a partial award for the costs Plaintiffs forwarded on behalf of Defendant in the amount of $15,500 plus statutory interest of 9% against jointly and severally against the Respondents which was confirmed by the Supreme Court of New York on March 17, 2023.  *See Pls.' Ex. D.*

[6] Attached to his *Response,* Defendant submitted the *Declaration of David B. DiMarco* (Doc. 32-1) and *Declaration of Anna DiMarco* (Doc. 32-2), both declaring that no improper or fraudulent billing occurred and stating that initially Mr. DiMarco defended the claims against him, but eventually Mr. DiMarco ran out of funds to afford legal

filed a Motion for Summary Judgment with a Supporting Affirmation of Susan Roney, Esq. and Affidavits of Dr. Sean Roddy and Jennifer Fanning. The Arbitration Panel never received a response to Plaintiffs Motion for Summary Judgment, despite reaching out to the Respondents via email and *sua sponte* extending the response deadline from January 13, 2023 to January 20, 2023. *Pls.' Ex. E,* "Order on Motion for Reconsideration and Scheduling Order # 6," p. 2, American Health Law Association, Case No. 6804, April 1, 2023. The Arbitration Panel specifically noted that "Although Claimants' Motion for Summary Judgment was unopposed, the Panel substantively evaluated it to assure that Claimants met their burdens of proof on both liability and damages." *Id.* at p. 3.

### *Arbitration Panel's Final Award[7]*

On August 2, 2023, the Panel issued its Final Award which comprised of a twenty-six-page opinion detailing the Panel's findings of liability of the Respondents for breach of contract and fraud. *See Pls.' Ex. G.* According to the Final Award, on November 17, 2021, the Statement of Claim was filed by Claimants against Respondents. On March 18, 2022, David DiMarco and DiMarco Vein Center filed an Answer, Affirmative Defenses, and Counterclaims. Each of the Claimants had different dispute resolution clauses in their agreements, so the parties met and conferred and ultimately agreed that the terms of the IPAWNY Agreement along with the Rules of Procedure for Commercial Arbitration would control the proceedings and that New York law would govern the dispute.

---

representation, and his wife Anna DiMarco loaned him funds from her personal assets but was eventually "unable and unwilling to continue to fund the expenses associated with this litigation."

[7] The following facts are taken from *Pls.' Ex. G,* the Final Award entered by the American Health Law Association Alternative Dispute Resolution on August 22, 2023, AHLA Case No. 6804.

On April 27, 2022, Claimants were granted leave to file an Amended Statement of Claim to add David B. DiMarco, M.D., P.C. as a party.  On May 13, 2022, in response to the Amended Statement of Claim, Respondents filed a second Answer, Affirmative Defenses and Counterclaims.  The Panel noted that Respondents failed to participate after this, and on October 3, 2022, an Order was entered in response to Claimants' Motion for Sanctions for Respondents' failure to make all required deposits for the costs of the proceeding, awarding $15,500 to Claimants plus interest for paying Respondents' share of the costs.

After no response was received by Respondents to Claimants' December 16, 2022 Motion for Summary Judgment, the Panel requested an allocation of damages to be submitted by Claimants to determine the amount of damages to be apportioned to each Claimant.  On February 16, 2023, Claimants filed a Certification of Jennifer R. Fanning to support Claimants' allocation of damages.  No response was received by Respondents by the February 27, 2023 deadline.  The Panel conferred and granted summary judgment in favor of IHBC and IHC for breach of contract and in favor of IHA for fraud.  After an email sent by Claimants' counsel pointing out that the Panel's reasoning on granting summary judgment on the fraud claim to IHA also applies to IHC and IHBC, the Panel treated the email as a Motion for Reconsideration and informed Respondents they had until March 24, 2023 to respond.  When nothing was received, on March 29, 2023, the Panel Chair sent another email to counsel stating Respondents have until the close of business that day to submit a response and gave an additional deadline of March 31, 2023 for Claimants to submit their application for pre-Award and post-Award interest and that Respondents would have ten days thereafter to respond.  No response to the Motion to Reconsider was submitted by Respondents.  In the April 1, 2023 Order, the Panel clarified that the fraud claims should have also been granted in favor of IHC and IHBC.  The Panel went on to state, "Like IHA, the evidence

submitted by IHC and IHBC demonstrate that IHC and IHBC also have proven the essential elements of fraud, specifically intentional false statement(s), reliance, and damage." *Pls. Ex. E,* p. 6.

The Panel stated that the evidence they considered suggested that some of the services Dr. DiMarco claimed to have performed in his bills, including x-rays, Doppler studies, and ultrasounds, were not performed, and, therefore, Dr. DiMarco's submission of bills under CPT code 37241 was improper. After noticing a spike in the use of this code in 2017, Claimants conducted an audit of all payments made under this code. During the audit, Respondents provided medical records under this code but failed to produce any of the underlying sonograms, x-rays, or films. Respondents[sic][8] engaged Dr. Sean Roddy, an independent vascular surgeon to review the medical records. Dr. Roddy found that Dr. DiMarco's procedure notes were too generic to identify the services actually performed and could not be "accurately attributed" to the claims or to CPT code 37241. The use of CPT code 37241 resulted in higher payments to Respondents from IHBC and IHC as opposed to what should have been paid if the proper code had been used. The Panel found this to be a breach of the agreements with IHBC and IHC since Respondents represented services to be performed other than those that were actually performed.

The Panel found the Roddy Affidavit provided ample evidence to conclude that Respondents intentionally made false statements to IHA. Specifically, the Panel relied on Dr. Roddy's conclusions that "(i) a healthcare provider's use of a CPT code is a representation that the code is correct; (ii) that Respondent's medical records were 'cloned'[9] and showed 'intentionally

---

[8] Page 16 of the Final Award says Respondents engaged Dr. Roddy, however, this Court believes this is likely a typographical error and it is more likely that Claimants engaged Dr. Roddy as an expert witness.

[9] The Final Award explains that "cloned" documents are "copied from one patient to another and do not accurately document patients' conditions or the services rendered." *Pls.' Ex. G.,* p. 18.

generic and vague' services; and that (iii) Respondents' rampant and long term use of the wrong CPT code resulted in them 'systematically misrepresent[ing]' the actual services provided. [Roddy Affidavit ¶ 13]." *Pls.' Ex. G*, p. 18.

The Panel took an in-depth and considered review of all the evidence provided and deduced that the failure to produce any substantiating medical records either meant that the purported studies were not performed, or they were performed but they did not support the clinical interventions performed by Dr. DiMarco. *Pls.' Ex. G.*, p. 20. The Panel concluded "In either event, Respondents' actions were outrageous and fraudulent" since some of the medical records were "inconsistent to the point of absurdity." *Id.* at 21.

The Panel found summary judgment to be appropriate on the count of fraud in favor of all Claimants since all of the Claimants relied on the fraudulent records in making the payments to Respondents. *Id.* The Panel found that Dr. DiMarco "personally committed the fraud" since "[o]rganizational entities such as DVC and PC only act through their principals, in this instance, Dr. DiMarco." *Id.* The Panel further noted that "Dr. DiMarco signed all of the reports of initial consultation and medical necessity, all of the reports of the preoperative studies such as x-rays, Dopplers and ultrasounds (which studies may or may not have been done) and the operative notes for the procedures which were billed by Respondents to Claimants (which operative procedures may or may not have been performed or medically necessary or indicated)." *Id.* Since Claimants would not have made payments "but for Dr. DiMarco's purported provision of professional medical services," "the Panel concluded that the Respondents are jointly and severally liable to Claimants for fraud." *Id.* at 21-22.

### *Supreme Court of New York Judgment*

On December 8, 2023, the Supreme Court of the State of New York County of Erie

entered an *Order Confirming Final Arbitration Award and Order for Judgment* at Index No.

811492/2023 ("Confirmed Judgment"). *See Pls.' Ex. H* (Doc. 29-2)*.*    The New York Supreme

Court confirmed the August 2, 2023 Final Arbitration Award in its entirety and entered a judgment

jointly and severally against each Respondent as of December 7, 2023 in the amount of:

    (i)    $1,652,487.24 plus per diem interest of $278.50 awarded to IHBC;

    (ii)    $629,727.69 plus per diem interest of $106.13 awarded to IHC;

    (iii)    $165,194.00 plus per diem interest of $40.73 awarded to IHA;

    (iv)    $20,000 (on account of the second deposit) plus interest in the statutory amount of 9% per annum awarded to IHBC, IHC, IHA, and IPAWNY.

On January 16, 2024, Plaintiffs each timely filed proofs of claim seeking the full

amount of the Confirmed Judgment.  *See Claim Nos.* 2, 3, 4, and 5.

### PLAINTIFFS' MOTION

Plaintiffs argue in their *Motion* that both the theories of collateral estoppel and *res*

*judicata*[10] bar relitigation of the Panel's findings that Defendant is liable for fraud.  Plaintiffs argue

the Final Award and subsequent Confirmed Judgment are entitled to preclusive effect since the

Final Award was actually litigated, essential to the final judgment, and the Defendant had a full

and fair opportunity to litigate.  *Universal Am. Barge Corp. v. J-Chem, Inc.,* 946, F.2d 1131, 1133

---

[10] *Plaintiffs' Brief* uses the two terms collateral estoppel and *res judicata* almost interchangeably, however, as further explained below, the Court will rely on New York law in its decision on whether collateral estoppel and *res judicata* apply, and New York courts refer to issue preclusion as collateral estoppel and claim preclusion as *res judicata. See Flaherty v. Lang,* 199 F.3d 607 (2d Cir. 1999).

(5th Cir. 1991).  Plaintiffs point to the holding of the Panel in the Final Award that the Debtor personally committed fraud and that Plaintiffs had "proven the essential elements of fraud, specifically intentional false statement(s), reliance, and damage," and argue that the Panel's findings satisfy the elements of 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6) which renders the Confirmed Judgment nondischargeable against Defendant.

Plaintiffs argue the elements of collateral estoppel are satisfied since the Defendant initially participated in the arbitration proceeding until he defaulted on fee payments.  Plaintiffs point to the facts that Defendant had full discovery rights in the proceeding and the Panel's ruling was a result of cross-motions for summary judgment.[11]

Plaintiffs also argue that the doctrine of *res judicata* bars relitigation of the claims since they have been decided on the merits in a final judgment before a court of competent jurisdiction. Plaintiffs argue that the elements of *res judicata* are satisfied since there has been a final judgment on the merits, the case includes identical parties, and the cause of action involves the same nucleus of operative facts.  *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009).  Based on this, Plaintiffs aver that the Defendant is barred from relitigating "(i) the existence or amount of the Plaintiffs' Claims, (ii) the Debtor's fraudulent conduct, or (iii) the damages and interest awarded." *Pls.' Brief,* ¶ 10.

Finally, Plaintiffs' position is that the Panel's holding in the Final Award satisfies the elements of § 523(a)(2)(A), (a)(4), and (a)(6).  Plaintiffs argue § 523(a)(2)(A) is satisfied since each element of fraud (knowledge of the falsity, intent to deceive, justifiable reliance, and

---

[11] Besides Plaintiffs' statement in the *Motion* that the ruling was a result of cross-motions for summary judgment, the Court has not been officially informed, through exhibits, oral statements made during any hearing, or the content of any of the relevant the pleadings that the Respondents to the arbitration proceeding filed their own motion for summary judgment.

damages) was established by the Panel in the Final Award. Specifically, Plaintiffs state the misrepresentation occurred when Defendant submitted thousands of claims under CPT code 37241 for procedures when either a less expensive service or no service was performed. Plaintiffs state that Defendant's knowledge of the falsity was established by the Panel's statement in its April 1, 2023 Order that Defendant's actions were "intentional, deceitful and indeed, outrageously so.[12]" *See Pls.' Ex. E,* p. 7. Plaintiffs relied on the billed CPT code in paying Defendant over $1.7 million in overbilled claims, and the damages with interest amounted to $2,543,899.87 as of December 7, 2023 according to the Confirmed Judgment.

Plaintiffs argue that the findings of the Panel in the Final Award also meet the standards for nondischargeability under §§ 523(a)(4), embezzlement, and (a)(6), willful and malicious injury. Under (a)(4), Plaintiffs argue that the Defendant's conduct meets the standard of embezzlement under this section since the Panel found that the Debtor intentionally received overpayments because of cloned records. Plaintiffs argue that the Debtor's subsequent alleged transfers of the overpaid funds to the DiMarco Irrevocable trust and to members of his family satisfies the elements of § 523(a)(4). As to Plaintiffs arguments that the Final Award meets the nondischargeability standard for debts incurred as a result of a willful or malicious injury under § 523(a)(6), Plaintiffs argue the Debtor's "scheme" was intended to injure the Plaintiffs. Since the Panel found the Debtor's conduct to be intentional with an injury resulting directly from the intentional conduct, Plaintiffs argue this satisfies the standard for a willful and malicious injury

---

[12] The full quote of the panel in the April 1, 2023 Order is "Combined with the significant issues with the veracity of the medical records, as detailed more specifically in Order #5, which cause the Panel to question the accuracy of the diagnoses as well as the nature of the services performed by the Respondents, the evidence against Respondents is overwhelming that Respondents' actions were intentional, deceitful and indeed, outrageously so in their dealings with respect to Claimants IHBC, IHC, and IHA."

under § 523(a)(6).  Plaintiffs cite to *In re Hazan,* 2018 WL 4718976 (Bankr. E.D.N.Y. Sept. 27, 2018)[13] in support of this position.

In addition to seeking summary judgment on Plaintiffs' claims of nondischargeability, Plaintiffs also seek summary judgment on their claim that the Debtor's exemption should be denied under 11 U.S.C. § 522(g) based on the argument that alleged transfers made by the Debtor to "the DiMarco Entities, the DiMarco Irrevocable Trust and to family members" "were made with the clear intent to hinder, delay, and defraud creditors, as evidenced by their timing and the lack of consideration." *Motion,* ¶ 13. Based on this statement, Plaintiffs argue any claimed exemption in such property or its proceeds must be denied under § 522(g).[14] *Id.*

### DEFENDANT'S RESPONSE

The Defendant argues in his *Response* and *Defendant's Brief* that he could not meaningfully participate in the arbitration and defend himself against the allegations because he could not afford to pay his attorney.  He argues because of his lack of participation, the doctrines of *res judicata* and collateral estoppel do not bar relitigation of Plaintiffs nondischargeability claims since in his opinion, the claims were not actually litigated.  The Defendant maintains that the billing codes used by him and his affiliates were proper, and all billed medical services were performed.

---

[13] The Court does not view this case as particularly helpful to Plaintiff's position as, although it gives a standard for "willful" and "malicious," the court in Hazan ultimately found that a *prima facie* case under § 523(a)(6) had not been set forth by the plaintiff and therefore dismissed the complaint.

[14] The *Complaint* only makes reference to § 522(g) while *Plaintiff's Brief* also references § 522(o) and § 522(q), in passing, to support Plaintiffs' argument that the exemptions should be denied as a result of the Debtor's alleged multiple transfers of assets "including residences, medical equipment, annuities, and accounts – to the DiMarco Entities, the DiMarco Irrevocable Trust and to family members (among others) within four years prior to the bankruptcy filing." *Plaintiffs' Brief,* p. 8, ¶ 13.  The *Motion* also does not reference section §§ 522(o) and (q). Therefore, the Court's analysis below is limited to whether the Debtor's exemptions should be denied according to § 522(g).  Since the alleged fraudulent transfers are still in dispute and no evidence has been supplied to the Court in support of the allegations, as explained below, the exact code section relied upon by Plaintiffs is irrelevant at this time.

The Defendant cites to a string of cases in this District that held a default judgment was not entitled to a preclusive effect in the context of a nondischargeability cause of action. *See In re Bertolotti*, 470 B.R. 356 (Bankr. W.D. Pa. 2011); *In re Masdea*, 307 B.R. 466 (Bankr. W.D. Pa. 2004); *In re Parker*, 250 B.R. 512 (M.D. Pa. 2000). The Defendant argues that based on these cases, the Court cannot give a default judgment a preclusive effect for purposes of a nondischargeability proceeding.

Finally, the Defendant argues that summary judgment as to the Defendant's exemptions is improper based on Plaintiffs' bare assertion without identification of the specific assets alleged to have been transferred. The Defendant argues that the property is properly exempted under the state law tenancy by entireties exemption.

## ANALYSIS

The Court will begin its analysis with a question not answered by either side's pleadings, that is, which state law applies to the determination of whether the claims herein are barred by the doctrine of collateral estoppel. Although Defendant cites to Pennsylvania case law in support of the notion that default judgments are not "actually litigated" and do not meet the standard for collateral estoppel, for the reasons explained below, New York law should govern on the issue of collateral estoppel.

The governing law on collateral estoppel/*res judicata* is the law of the jurisdiction where the judgment was entered, which in this case was New York. *See In re Bertolotti* 470 B.R. 356 (Bankr. W.D. Pa. 2012). In *Bertolotti,* the court stated that "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that this Court to give the state court judgment the same preclusive effect it would be given in courts of the rendering state." *In re Bertolotti* 470 B.R. at 359-60 (citing *Straker v. Deutsche Bank Nat. Trust,* No. 3:09-cv-338, 2011 WL 398374 at * 4 (M.D. Pa. Feb. 3,

13

2011)).  The judgment in *Bertolotti* was rendered in the Washington County Court of Common Pleas, so the Court relied upon Pennsylvania law in deciding on the summary judgment motion. *Id.*  In *Parker*, the court stated, "A state's own courts are presumed competent to define that state's laws; therefore, one must look first to state court precedent to determine applicability of collateral estoppel."  250 B.R. at 516 (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 478 (1982)). Therefore, since the Final Award and Confirmed Judgment took place in Erie County, New York and were governed by New York law,[15] this Court will answer the questions of whether *res judicata* and collateral estoppel bar relitigation of the issues pertaining whether the debt is nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6) according to New York law.

### Res Judicata

As to whether the doctrine of *res judicata* bars relitigation of the issues, this Court finds it does not.  *Res judicata,* also known as claim preclusion dictates, under New York law, that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *Hazan,* 2018 WL 4718976 * 5 (quoting *Specialized Realty Servs. LLC v. Maikisch*, 123 A.D.3d 801, 802 (N.Y. App. Div. 2d Dep't 2014)).  Plaintiffs' *res judicata* argument is misplaced in this instance since the claims of nondischargeability under § 523(a)(2)(A), (a)(4), and (a)(6) are wholly different from claim of overpayments before the arbitration panel.  The issue of dischargeability falls within the exclusive jurisdiction of the Bankruptcy Court.  *Hazan,* 2018 WL 4718976 * 5 (citing *Brown v. Felsen*, 442 U.S. 127, 138–39 (1979); *DiNoto*, 46 B.R. at 491; *In re Moran*, 413 B.R. 168, 178–79 (Bankr. D. Del. 2009); *In re Billings*, 94 B.R. 803, 807 (Bankr. E.D.N.Y. 1989); *In re Huff*, 16 B.R. 823, 824–25 (Bankr. W.D. Ky. 1982)).

---

[15] The parties to the arbitration also agreed to proceed under New York law.  *Pls.' Ex. G.,* p. 2.

### *Collateral Estoppel*

New York courts apply collateral estoppel to issues that were raised in a prior proceeding, actually litigated, and where the determination of the issue was necessary to the outcome. *In re Huber,* 171 B.R. 740, 748 (Bankr. W.D.N.Y. 1994)(citing *Spilman v. Harley,* 656 F.2d 224 (3d Cir. 1981)). In the context of a dischargeability complaint, the Second Circuit has held that a judgment in a first action has a collateral estoppel effect as to issues that were "actually litigated and determined." *Matter of Allen,* 3 B.R. 355, 357 (2d Cir. 1980) (quoting 46 Am.Jur.2d Judgments § 418 (1969)). Any issues that were actually decided and necessary to the rendering of the judgment are precluded from being relitigated in bankruptcy court. *Id.* at 359.

In *In re Pulver,* the court stated that "Although the issue of nondischargeability of a debt is exclusively a matter of federal bankruptcy law, the law is nevertheless clear that the Bankruptcy Court must give collateral estoppel effect to those elements of a non-bankruptcy claim that are identical to the elements required for discharge and which were actually litigated and determined by a prior action." 327 B.R. 125, 132 (Bankr. W.D.N.Y 2005). The court noted that in a dischargeability proceeding the three elements that must be determined are "liability, damages, and dischargeability." *Id.* The court stated that the findings of the state court can be adopted and not only do those findings apply to the issues of liability and damages but sometimes can be applied to the issues of "fraud, larceny, embezzlement and willfulness." *Id.* at 133.

Further, the court reiterated that the issue does not have to be fully and completely litigated but there must have been a full and fair ***opportunity*** to litigate the issue. *Id.* (emphasis added). *Pulver* involved a state court judgment pursuant to a divorce action resulting from the debtor improperly drawing from a home equity line of credit. *Id.* The state court made findings that the debtor knowingly made false representations with the intent to deceive the plaintiff by

15

assuring her that no withdrawals of the home equity line of credit would take place without her consent, she knowingly relied on the false representations in opening the line of credit, and she suffered a proximate loss of $37,000 as a result of the Debtor's actions. *Id.* at 133. The bankruptcy court held that the debtor, who was plaintiff's ex-husband, had a "full and fair opportunity at the State Court trial to be heard on the issues of liability and damages and that the Home Equity Judgment is nondischargeable under Section 523(a)(2)(A) because of the Debtor's actions resulted in his obtaining property from Gattalaro [plaintiff/debtor's ex-wife] as a result of actual fraud." *Id.*

New York courts have found that default judgments can have a collateral estoppel effect if the parties to the action were afforded a fair opportunity to litigate the issue. *Evans v. Ottimo,* 469 F.3d 278 (2d Cir. 2006). In *Evans,* the court stated "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Id.* at 281 (citing *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455-56 (1985); *Khandhar v. Elfenbein,* 943 F.2d 244, 277 (2d Cir. 1991)). In *Evans,* the Ottimos did not dispute they were properly served in state court and afforded the opportunity to contest Evans' allegations of fraud but failed to answer the complaint, participate in the inquest (a New York state assessment of damages hearing), or appeal the judgment. *Id.* at 282. In New York, when a party defaults by failing to file an answer, the defaulting litigant may not further contest liability issues. *Id.* (citing *Kelleran,* 825 F.2d at 694).

The court in *Evans* opined that the more difficult question was whether the issue of fraud set forth in § 523(a) of the Bankruptcy Code was identical to the issue decided in state court. 469 F.3d at 282. The court looked to whether fraud was "placed in issue and actually determined

in state court, and whether the elements of fraud under New York law are identical to the elements of fraud under the Bankruptcy Code § 523(a)." *Id.* The court recited the elements of fraud in New York are false representation of a material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury and found these elements to be identical to those in § 523(a)(2)(A) fraud. *Id.* The court also noted that in state court, fraud must be proven by clear and convincing evidence while it need only be shown by a preponderance of evidence in bankruptcy court. *Id.* at 283. In *Evans* the state court held "there's been a very definite element of fraud and deceit in this matter" and imposed punitive damages. *Id.* at 280. The *Evans* court found collateral estoppel applied and, therefore, the state court's holding was determinative of the issue of nondischargeability. *Id.* at 283.

Plaintiffs cite to *Universal* for the argument that the findings and conclusions of an arbitration panel have the same preclusive effect as a state court award when the elements of collateral estoppel are satisfied. 946 F.2d at 1131. In *Universal* the court found that an arbitration decision had a preclusive effect on a "vouched in" party who did not personally submit a defense, but instead was the indemnified party to the arbitrated defendant, Universal. *Id.* at 1142. "In an arbitrable case not involving federal statutory or constitutional rights, courts should use a case-by-case approach to determining the collateral estoppel effects of arbitral findings." *Id.* at 1136.

In another case cited by Plaintiffs, *In re Zangara*, 217 B.R. 26 (Bankr. E.D.N.Y. 1998), Zangara was a stockbroker who performed unauthorized trades on a client's account. An arbitration panel issued a memorandum that did not contain specific findings but contained the statutory basis for the award. 217 B.R. at * 29. The memorandum did contain findings that the client's testimony that the trades were unauthorized was credible and Zangara's testimony that the trades were authorized was not credible. *Id.* The panel relied on section 27.01 of Texas's Business

and Commerce Code finding that issuing the award constitutes a finding that Zangara made a false representation to the client with respect to the unauthorized trades which amounted to fraud. *Id.* at 30. The bankruptcy court looked to whether Texas courts would give the arbitration award a preclusive effect with respect to the determination of fraud. *Id.* at 31. The Court found that Texas would give preclusive effect to the award, citing to *Universal* which stated that the decision to give arbitral findings a preclusive effect is in the broad discretion of the district court and the risk of prejudice is at an acceptable level when the arbitrators reduced their findings to a detailed written memorandum. *Id.* at 32. The court held that the issues of fraud were the same, the issue was fully litigated, and the determination of fraud was necessary for the award. *Id.* at 33-35. The court held that the decision was not binding as to a finding of "willful and malicious" injury under § 523(a)(6) since it was not clear from the award that the debtor's conduct of unauthorized trading would have necessarily resulted in harm. *Id.* at 35-36.[16]

Furthermore, in the case at bar, since the findings of the arbitration panel were confirmed by the New York state court, the findings are entitled to the same treatment as a state court judgment. *See Boyard,* 538 B.R. 645, 651 (Bankr. E.D.N.Y. 2015) ("The findings in the Award are therefore entitled to the same treatment as any other judgment of the Florida Circuit Court, since confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'") (quoting *Citigroup, Inc. v. Abu Dhabi Inv. Auth.,* 776 F.3d 126, 132 (2d Cir.2015) (citing *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir.2006)); *In re Drexel Burnham Lambert Grp., Inc.,* 161 B.R. 902, 907 (S.D.N.Y.1993); *In re Clayton,* 168 B.R. 700, 705 (Bankr.N.D.Cal.1994) (Once an arbitration

---

[16] The Court will delve further into this holding, below, since the Court is of the opinion that the circumstances herein are distinguishable from those in *Zangara.*

award is confirmed, the judgment is as final as any other judgment of the issuing court, and future courts applying the award's findings must treat the award as if it had been rendered directly by the court that confirmed it.)).

In *Boyard,* the court held that an arbitration award that found the Debtor liable for fraud and embezzlement in accepting contribution to a partnership interest for an invention that the Debtor never followed through with barred the Debtor from relitigating the issue, and the debt was nondischargeable under § 523(a)(2)(A) and (a)(4). *Id.* The court looked to Florida law on collateral estoppel to determine the Florida judgment confirming the arbitration had a preclusive effect on the nondischargebility proceeding. *Id.* It found that even though the arbitration was akin to a default judgment since the Debtor did not appear, the issue was fully and fairly litigated and the determination of the issues of fraud and embezzlement were necessary for the determination of the award. *Id.*

Based on the record before this Court, it is clear that Mr. DiMarco had a full and fair opportunity to litigate the claims in the Final Award and Confirmed Judgment.[17] The Defendant initially participated in the arbitration filing two sets of Answers, Affirmative Defenses, and Counterclaims, and providing some discovery until he decided to stop paying his lawyer,[18] and even still, he had notice of the proceedings every step of the way. The Final Award makes it

---

[17] Also pointed out by Plaintiffs at the August 22, 2025 oral argument on the *Motion* is that in denying motions to dismiss the Involuntary Chapter 7 cases of DiMarco Vein Center and DiMarco MD, P.C., Case Nos. 24-10389-JCM and 24-10390-JCM, respectively, the Court held the claims were not subject to a bona fide dispute because the Final Award was not a default judgment but a judgment on the merits since there was participation by the Respondents, the Panel relied on factual findings based on the record in rendering its decision, and the Panel separated the amounts due to each Claimant. *See Audio Hearing Transcript of Hearing Held September 12, 2024* at 10:42:04 – 10:42:43.

[18] The Defendant maintains that he ran out of money to pay his lawyer, however, with roughly two-million dollars in claims being asserted against him and given his previously lucrative practice as being a surgeon, the Court is not convinced that the Defendant could not afford to pay his lawyer but instead believes it is more plausible that he simply chose not to. Further, no evidence was submitted to support the Defendant's alleged lack of resources to defend the claim. Regardless, the reason for Defendant's lack of participation in the arbitration proceeding is irrelevant to the Court's determination herein.

clear that at every juncture where a response deadline was set, the Panel emailed the Defendant to elicit his participation.[19]  This Court finds that the Defendant had the *opportunity* to participate and assert a defense and for purposes of collateral estoppel, the Final Award is entitled to the same weight as a state court judgment since it was confirmed by the Supreme Court of New York in the Confirmed Judgment.  Now that the Court has determined that the Defendant had a full and fair opportunity to litigate the Final Award, the Court will consider each of the counts in the *Complaint* and determine whether the issues contained in each claim were actually litigated and necessary to the outcome of the Final Award.

### Count I - § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable if it was incurred a result of actual fraud. Therefore, the question before this Court is whether fraud was actually litigated in the arbitration proceeding. A review of the Final Award leads to the conclusion that the Panel reviewed, and relied upon in rendering its decision, evidence in the form of the billing and claim submissions and their supporting medical records/doctor's notes along with sworn expert testimony and relied on this evidence in issuing a detailed Final Award that found that Plaintiffs paid out fraudulently overbilled claims to the Defendant.  Based on the detailed findings in the Final Award and the identical elements of fraud and § 523(a)(2)(A),[20] the Final Award is determinative and falls squarely within § 523(a)(2)(A), and the judgment is therefore nondischargeable.  Although Defendants dispute the underlying factual basis for the Final Award, there is no dispute that the Final Award was issued and confirmed with the New York state court on December 3, 2023 in the Confirmed Judgment.  Therefore, the Court will grant the *Motion* as

---

[19] The emails may have been sent to counsel for the Respondents in the arbitration proceeding, however, the Plaintiffs have indicated that counsel for the Respondents never withdrew his appearance in the arbitration proceeding.

[20] *See Evans,* 469 F.3d at 282.

to Count I of the *Complaint* and the amounts awarded attributable to the overbilled claims[21] as

stated in the Confirmed Judgement are nondischargeable under § 523(a)(2)(A).

### Count II - § 523(a)(4)

Pursuant to 11 U.S.C. § 523(a)(4), a debt is nondischargeable if it is a debt "for

fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Plaintiffs

argue that the elements to § 523(a)(4) are satisfied since the Agreements imposed upon the Debtor

"fiduciary-like duties" in the form of the obligations to submit accurate claims and hold

overpayments for the Plaintiffs' benefit.  Plaintiffs argue since the Panel found that the Defendant's

conduct in using the incorrect CPT code with the submission of cloned medical records was

intentional, and the Defendant allegedly transferred the overpaid funds to the DiMarco Irrevocable

Trust and family members, the requirements for embezzlement under § 523(a)(4) are met.  The

Court finds that this argument is too attenuated to pass muster at the summary judgment stage.

Furthermore, in order for embezzlement to occur, the Debtor must have been in lawful possession

of the embezzled property. *See In re Hoyt,* 326 B.R. 13, 19-20 (Bankr. W.D.N.Y. 2005).  Based

upon the Panel's findings in the Final Award, the Defendant was not in lawful possession of the

overpaid funds, so this element of a claim for embezzlement is not satisfied.  Therefore, the

Plaintiffs argument under § 523(a)(4) fails, and the Court will deny the *Motion* as to Count II.

### Count III - § 523(a)(6)

Under 11 U.S.C. § 523(a)(6), a debt incurred as a result of a "willful and malicious

injury by the debtor to another entity or to the property of another entity" is nondischargeable.

---

[21] This Court's granting of the *Motion* as to "the amounts awarded attributed to the overbilled claims" means that the $20,000 awarded to Plaintiffs due to Defendant's failure to pay his portion of the arbitration fees will not be excepted from discharge since the debt was not incurred as a result of fraud or willful and malicious injury.

Plaintiffs maintain that the elements of § 523(a)(6) are satisfied by the Final Award and a willful malicious injury has occurred since the Defendant's conduct was found to be intentional and it was substantially certain that the Defendant's conduct of submitting the false claims using the incorrect CPT code was substantially certain to cause harm to the Plaintiffs.

Courts have determined that the "willful" prong means the conduct must have been "deliberate and "intentional" and the "malicious" prong means the conduct was "without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d 84, 87 (2d Cir. 1994).[22]  In order to prove a willful and malicious injury occurred under (a)(6) Plaintiffs must show there was a (1) wrongful act intentionally done (2) which necessarily causes harm and is without just cause or excuse. *Zangara,* 217 B.R. at 35.  The Court in *Zangara* found that the debtor's conduct of undertaking unauthorized trading on his client's account would not have necessarily caused injury to the plaintiff since there was the possibility that the unauthorized trades could have been profitable. *Id.* at 36.  Here, the Panel found that the Debtor's intentional conduct caused injury to the Plaintiffs.  The Court cannot consider any scenario where intentionally submitting fraudulent claims would not harm the Plaintiffs – the entities obligated to pay the overbilled claims.  Therefore, the Court will grant the *Motion* as to Count III, and the amounts awarded attributed to the overbilled claims as stated in the Confirmed Judgment are nondischargeable under 11 U.S.C. § 523(a)(6).

---

[22] In *Stelluti,* the Debtor-wife appealed the bankruptcy court's holding, and the district court's affirmation, that the debt she incurred by transferring funds originally located in the operating account of a car dealership and owed, and per the Dealership Agreement were to be immediately forwarded, to the auto financier to various personal checking accounts opened with her husband was nondischargeable under § 523(a)(6).  94 F.3d at 87-88. Even though the wife maintained she did not know that the funds belonged to the auto financier, the Second Circuit found it was sufficient that she intentionally transferred the funds to out of state bank accounts with her husband was sufficient to satisfy the willful and malicious standard and therefore affirmed that the debt was nondischargeable. *Id.* at 88.

### *Counts IV, V, and VI – Plaintiff's Request to Disallow Debtor's Claimed Exemptions*

As to whether the Court should grant summary judgment in favor of disallowing the Debtor's stated exemptions under §§ 522(g) (Count IV), on the grounds that the Debtor transferred property with the actual intent to defraud his creditors (Count V), and on the grounds that the assets in which the Debtor has claimed his exemption are the proceeds of ill-gotten gains (Count VI), the Court finds that summary judgment of these counts is not warranted.  Section 522(g) states:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

Plaintiff has not identified with specificity the alleged transfers and the identity of the recipient of the transfers, nor has the Plaintiff produced evidence that the transfers were fraudulent.  Plaintiffs have also not yet produced evidence that the assets that the Debtor has claimed as exempt were funded by the overpayments the Debtor received from the Plaintiffs.  Therefore, there is insufficient evidence before this Court at this time to reach a conclusion as to the impropriety of any transfer and the claimed exemptions of the same. The underlying factual allegations of the alleged fraudulent transfers under §§ 542, 543, 544, 547, 548 and/or 550 are currently the subject of an ongoing adversary proceeding filed by the Chapter 7 Trustee. *See In re Joseph B. Spero v. Joyce Anna DiMarco, Platinum Heirs Equine, LLC, DiMarco Body Sculpting and Aesthetics, LLC,*

*DiMarco Vein Center, LLC, David B. DiMarco MD, P.C., Ralph Minto Jr., Trustee of the David B. DiMarco Irrevocable Trust, Joyce Anna DiMarco, Trustee of the David B. DiMarco Irrevocable Trust, John Doe, and Jane Doe, Adversary Case No. 25-1005-JCM.*  Since the facts of the underlying transfers are in dispute, summary judgment on Counts IV, V and VI of the *Complaint* will be denied.

## CONCLUSION

The Court will grant summary judgment in favor of the Plaintiffs as to Counts I and III of the *Complaint¸* and the amounts as stated in the Confirmed Judgment (excluding the $20,000 awarded to Claimants for the portion of arbitration fees that they paid on behalf of the Respondents)[23] are excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6).  The Court will deny summary judgment as to Count II (objection to discharge per § 523(a)(4)) and Counts IV, V, and VI (disallowance of the Debtor's claimed exemptions). Further proceedings with respect to Count II are moot since the Court has found the Final Award to be nondischargeable under § 523(a)(2)(A) and (a)(6). The Court will issue its Standard Pretrial Order with respect to Counts IV, V, and VI which will track the deadlines as set forth in the Pretrial Scheduling Order issued in *Adversary No. 25-1005-JCM.*  The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 9/19/2025

BY THE COURT:

SIGNED
9/19/25 3:21 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

John C. Melaragno, Judge
United States Bankruptcy Court

---

[23] This $20,000 amount awarded to Plaintiffs was not incurred as a result of fraud or willful malicious injury, so therefore, this portion of the Final Award, alone, is dischargeable.